Graves, J.:
Worthington, Meek & Cheeney, a firm of Milwaukee, Wisconsin, on January 24, 1874, made their promissory note for four hundred dollars and interest at ten per cent., on three months’ time, payable to Chubb’s order, and Aldrich, claiming that Chubb negotiated the note to him, and guaranteed its collection, and had become fixed with liability, brought this suit in the superior court of Grand Rapids to enforce the guaranty. He averred the making of the note by Worthington, Meek & Cheeney, its negotiation and endorsement over by Chubb to him, and Chubb’s contract of guaranty. He then averred further that when the note matured he brought his action at law upon it against the makers “ and prosecuted the same with all due diligence to a judgment, and did cause execution to be issued thereon, whieh was returned unsatisfied and unpaid;” “that he expended a large sum of money in prosecuting said suit and in the payment of the costs therein? to wit: the sum of one hundred dollars, and that by reason of the non-payment and non-collection of said judgment, the defendant herein became and was and is liable to pay the plaintiff the amount of said note and interest according to the tenor and effect thereof, and also the amount of said costs and disbursements, and being so liable, did, at the city of Grand Rapids, on, to wit, the third day of January, 1874, promise,” etc.
The declaration was very general. It omitted to set up the time of the guaranty, and there was no allegation showing in what court or when or in what place or country the proceedings against the makers were carried on, or showing-*any of the particulars of such proceedings. There was, however, no demurrer, and defendant simply pleaded the general issue, and the cause was tried before a jury. The note and guaranty having been introduced, the plaintiff offered in evidence a record of proceedings had in tne county court of Milwaukee, in Wisconsin, and purporting to be the record of a suit there by Aldrich against Worthington, Meek & Cheeney, the makers of the note, and apparently in accordance with the mode of procedure which prevails in *337 Wisconsin. It set out a summons to answer the complaint in the action, the sheriff’s certificate of personal service on Worthington and Meek and inability to find Che'eney. It next set out the complaint of Aldrich against Worthington, Meek & Cheeney, charging them as makers of the note in question, and demanding judgment for the amount and the protest fees. The summons and complaint were dated April 30, 1874, and service on Worthington and Meek was certified as made June 7th afterwards. Next after these entries the record stated that all the defendants answered by attorney on the third of June, 1874, and generally.denied every thing in the complaint. Following this was an entry of the following tenor: “And afterwards, to-wit, on the second day of January, 1875, came the defendants George.Worthington and William C. Meek, and filed their notice and copy of order of adjudication in the words and figures following, to-wit:
“County court, Milwaukee county,
“ Moses V. Aldrich v. George Worthington and William C. Meek impleaded with others.
“ Take notice that upon the papers and proceedings heretofore had in the above entitled action, and upon a certified copy of the order of the district court of the United States for the eastern district of Wisconsin, adjudging the defendants herein, George Worthington and William C. Meek, bankrupts, a copy of which order is herewith served upon you, the said defendants, Worthington and Meek, will, on the 2d day of January, 1875, at the opening of court on *said day, or as soon thereafter as counsel can be heard, apply to the court in which this action is pending, for a stay of proceedings in this action as to them until the question of their discharge from their debts in bankruptcy be determined. Dated December 23, 1874.
“J. F. McMullen,

“Attorney for Defendants Worthington and Meelc.

“To Finches, Lynde & Miller,

“Plaintiff’s Attorneys.”

Succeeding the entry of this notice, appeared a certain proceeding in bankruptcy in the district court of the United *338 States for the eastern district of Wisconsin, in the matter of • petitioning creditors against Worthington and Meek, certified by the clerk of the court of the United States, and this proceeding purported to bear date October 8th, 1874, and to be an adjudication, on the admission of Worthington & Meek, that they had committed an act of bankruptcy as had been alleged against them, and that they were bankrupts within the meaning of the act of congress. It further purported to have ordered that Worthington and Meek should within five days make and deliver or transmit by mail, post paid, to the marshal a schedule of their creditors, and inventory of their estate, in the form and verified in the manner required of the petitioning debtor by the act of congress.
The record of the county court then goes on to say, that on •this motion and showing the stay prayed for, namely, that proceedings against Worthington and Meek in the suit on the mote might be stayed until the question of their discharge from 'their debts in bankruptcy should be determined, was granted by the county court.
Succeeding the entry of this special motion and the evidence adduced to support it, and the allowance of the stay as moved for, the record further set forth an individual answer by Cheeney, on July 8th, 1875, by other counsel, and in which he denied liability. It was entitled as in a case pending against-the three defendants. The next entry set out a trial by jury of the issue raised by Cheeney’s answer and a ^finding for Aldrich against him for four hundred and fifty dollars and seven cents damages, a motion for new trial by Cheeney and a denial of that motion, and judgment in favor of Aldrich against Cheeney alone, for the damages found by the jury, and costs of suit, being fifty-seven dollars and seventy-three cents. A further entry appeared under date of January 10th, 1876, of an order of the court, reciting that judgment had been entered against George Worthington and William C. Meek by mistake, and ordering, on motion of the attorneys for Aldrich, that it should be vacated as against them, and that the record be corrected so as to show judgment entered only against Cheeney. The *339 record then states that judgment was docketed January 18th, 1876.
The next entry was of execution in an action by Aldrich against Worthington, Meek and Cheeney, hut upon a judgment in such action against Cheeney alone, and a certificate of the sheriff that he could find no property belonging to Cheeney, and therefore returned the writ wholly unsatisfied. The entry purports that the execution was issued January 29th, 1876, and made returnable in sixty days after its receipt, that the return of nulla bona was endorsed on the very day the writ was issued, but that the process was not filed in court until February 16th, 1876.
When the plaintiff offered this documentary proof from Wisconsin in the court below, it was objected to by defendant’s counsel “for the reason that the declaration in this cause did not name the court nor the place where said judgment was obtained, nor whether it was a court of competent jurisdiction, and gave the defendant no information where the said judgment could be found.” The objection was overruled and the evidence was admitted. The defendant’s counsel excepted.
The plaintiff then gave evidence of computation of the amount which the note called for, being five hundred and thirty-five dollars and ninety-seven cents, as testified, and rested the case.
The defendant offered no evidence, and the judge directed *the jury to find for the plaintiff for the computed sum of five hundred and thirty-five dollars and ninety-seven cents. Defendant’s counsel excepted to this direction and insisted there was no evidence to warrant it. The jury found as directed, and judgment was entered on the finding. The cause comes up on a case made, which appears to contain all the evidence, or at least the substance of it, and the points involved arise on the exception taken on the offer of the Wisconsin record, and the exception to the judge’s direction to find for the plaintiff. The first exception was not well based. The objection was confined to the want of particularity and certainty in the declaration. No complaint was made that the document offered was not well authenticated, or *340 did not embody any thing relevant, or embraced improper matters. We discover no reason for saying the declaration was so far lacking as not to contain on its face the substance necessary in alleging a cause of action on the guaranty. And we cannot, therefore, hold that it did not set up a cause of action. It was undoubtedly open to objection if made in the right way; but its actual imperfections were not such as to give the defendant positive right to complain of them in the manner chosen. It would lead to very strange results if a defendant might pass by demurring and plead to the merits, and after-wards turn his adversary out of court on the trial, on account of formal defects in his declaration: Jennison v. Haire, 29 Mich., 207; Hatheway v. Sackett, 32 Mich., 97, 103; Van Middlesworth v. Van Middlesworth, Id., 183, 187; Downs v. Hawley, 112 Mass., 237, 241; Canterbury v. Dennett, 22 Conn., 623; Wills v. Claftin, 2 Otto, 135, and eases cited in these decisions.
The plaintiff’s counsel say in the brief, that no other question was raised upon the trial, or could be raised by the practice of the court. We think the exception to the court’s positive direction to find for the plaintiff on the evidence given, must have been forgotten. The question presented by this exception is the important one in the cause, *and we do not see how it can be evaded. At the least it was incumbent on the plaintiff to show, as an indispensable preliminary to his right of action against Chubb as guarantor of the collection of the note, that inability to collect of Worthington, Meek & Cheeney by reasonable diligence had been previously ascertained. — Barnes v. Baker, 2 Mich., 377; Thomas v. Dodge, 8 Id., 51; Barman v. Carhartt, 10 Id., 338. That so much is required respecting inability to make the demand out of the principal debtor, as a condition of recovery against the guarantor, is generally, if not universally, conceded; and where there are several such principal debtors, both reason and authority require, that the plaintiff shall make out the condition as to each and all. In regard to the sense and interpretation of the contract, concerning the facts required to satisfy the condition, there is diversity of opinion. The rule differs in different states. In some the undertaking *341 of the guarantor is considered as imjiorting that he will pay in case the principal debtor is insolvent, or in case the creditor, by the use of ordinary business efforts, is unable to obtain payment. — Marsh v. Day, 18 Pick., 321; Sanford v. Allen, 1 Cush., 473; Miles v. Linnell, 97 Mass., 298. And it seems to make no difference whether the terms are: “I guarantee the collection of the within note,” or “I promise this note is good and collectible after due course of law,” or “I warrant this note good.” — Edwards B. & N. (2d ed.), 220 et seq.; 2 Danl. on Nog. Insts., 649, and cases cited.
Where the contract is thus viewed, the plaintiff, in making out compliance with the condition precedent to his right of action against the guarantor, is not bound, unless the declaration requires it, to make it appear that inability to obtain payment of the principal debtor has been established by the prosecution of legal proceedings against him without effect. The legal quality of the obligation deduced, it is said, does not necessarily require it, but may be satisfied by proof of facts showing insolvency, or proof of removal from the country, or the like. On the other hand, it is held in *some states, that the legal sense of the contract is, that the debt will be obtained if the principal debtor is seasonably and diligently prosecuted, and that such prosecution, carried out to a final consummation without success, is a condition precedent to any right of action against the guarantor. And this appears to be the law in New York.— Craig v. Parkis, 40 N.Y., 181, and other New York cases cited in Edwards on B. & N., supra. The same doctrine is conclusively settled in Wisconsin. —Day v. Elmore, 4 Wis., 190; Dyer v. Gibson,. 16 Id., 557; French v. Marsh, 20 Id., 649; and the court expressly ruled, in the last case, that admitting as matter of fact the insolvency of the principal debtor, there could be no right of action upon the guaranty, unless it appeared that a suit had been seasonably commenced against the principal debtor and diligently prosecuted to judgment and execution without avail.
Now the note to which the guaranty in this case applied was made in Wisconsin and was there payable, but whether ■the guaranty of collection was made there or not, does not *342 appear from the record. If it was, its interpretation and legal' sense would he governed by the law of that state. — Scudder v. Union National Bank, 91 U. S. R. (1 Otto), 406. And since it was an undertaking for the goodness of a note made and payable there, and was thus connected with the place of performance of the principal undertaking, it may be that it should be considered as concocted and executed in contemplation of the laws of that state, and be accordingly interpreted by them, even if the act of executing the contract was done here. These considerations are perhaps not very important now, but the future of the action may require attention to them. Considering the state of the record and the positions taken by counsel, we shall view the guaranty as one made here and governed by our laws. And this course, supposing any difference to exist, is not one of which the plaintiff can complain. Our own decisions, supra, imply that in a suit against the party guaranteeing collection, the plaintiff must certainly prove a state *of facts which establish inability to collect of the principal debtors, one and all, and all authorities admit that such inability may be proved by showing a prosecution seasonably commenced against and diligently and in good faith carried on against all to final judgment and execution without avail.
The declaration in the case before us was framed on this theory, and it averred in substance that the right to sue upon the guaranty had become perfect by the prosecution of all the principal debtors to judgment and execution without obtaining anything. If alleged that the note not being paid at maturity, the plaintiff brought his action at law upon it against the “makers, and did prosecute the same with all due diligence to a judgment, and did cause execution to be issued thereon, which was returned unsatisfied and unpaid.’*
No other course was alleged to have been pursued to fix the guarantor. No intimation was given of the bankruptcy of either of the principal'debtors, or of discharge in bankruptcy, or of any fact to hinder a prosecution against them to judgment and execution, or of any matter, except as before stated;. *343 on which to urge, as a conclusion of law, that a right of action on the guaranty had become perfect.
The plaintiff was accordingly bound to maintain this allegation by proof. The point was involved in the right of action. The fact was a material one in the basis of the plaintiff’s case. It was incumbent upon him to show that he had prosecuted Worthington and Meek, as well as Cheeney, to final judgment and execution, without success. But what were the proofs ? He relied wholly for this part of the case upon the papers certified from Wisconsin as a record of the county court of Milwaukee. Without deciding the point, let it be admitted that, as a consequence of the authentication of those papers as together constituting the record, the court below was bound to intend that the proceedings from the federal court, and which were only shown to the Milwaukee court to support a motion for a temporary stay, were in contemplation of law components of the record of the Milwaukee court, and what, as the most that can be ^claimed for it, did the Milwaukee record prove, with the proceedings of the federal court thus engrafted upon it? First, That Aldrich commenced suit against all the makers of the note, or principal debtors, and prosecuted it to final judgment and execution against Cheeney alone, without being able to collect; second, that summons was issued against all such principal debtors on the 30th of April, 1874; that the cause was actually put at issue by all on the 3d of June, and was there suffered to rest for about seven months, or until the 2d of January, 1875, when two of such debtors, Worthington and Meek, moved the court on the evidence afforded by the certified proceedings in bankruptcy to stay proceedings in the cause as to them “ until the question of their discharge from their debts in bankruptcy be determined,” and that the Milwaukee court granted the motion as prayed. At what time after the joining of the issue and before this motion the imputed acts of bankruptcy were committed we are not informed, and it is not important now. But the evidence of prosecution of the principal debtors goes no farther.
As to two of the principal debtors it shows a stopping of *344 the suit temporarily after issue joined, and if the evidence on whieh the stay was allowed is taken as part of the record of the Milwaukee court, it also explains the occasion and ground of such temporary stay. There was no showing of any determination in the Milwaukee court as to the two principal debtors, and as to them the suit would appear to be still pending. The adjudication in bankruptcy shown to the Milwaukee court was preliminary and not final. — R. S. IT. 8., p. 978, § 5080. And the application was made and granted under § 5106, which provides as follows: “No creditor whose debt is provable shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt until the question of the debtor’s discharge shall have been determined; and any such suit or proceedings shall, upon the application of the bankrupt, be stayed *to await the determination of the court in bankruptcy, on the question of the discharge: Provided, There is no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge: And provided, also, That if the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment for the purpose of ascertaining the amount due, whieh amount may be proved in bankruptcy, but execution shall be stayed.” There was no showing in the court below as to what became of this bankruptcy proceeding. There was no evidence concerning the time or manner of its resulting. We only know that the state court entered a temporary and provisional stay, and for aught that was proved the impediment which occasioned the stay may have ceased, or the note may have been satisfied wholly or in part from bankruptcy assets. There was no proof that Worthington and Meek, or either, were discharged, or that their assets were insufficient to pay their liabilities. In short, there was no proof showing inability to obtain from them the amount of the note, or that it had not been obtained, and much less any proof to support the case made by the declaration, that all the principal debtors had been diligently prosecuted to judgment and execution without effect.
The evidence came short therefore of showing a right of *345 action on the guaranty as claimed, and the exception to the judge’s direction to find for the plaintiff was well taken. It may be proper to suggest that if the action were so shaped as to authorize proof of the discharge of Worthington and Meek in bankruptcy, instead of requiring proof of judgment and execution against them without effect in the county court, it would not be safe to rely upon matters drawn into the state court from the court in bankruptcy to prove the discharge or the determinations in the court of bankruptcy. The proceedings in the latter court would be more safely shown, to say the least, by authenticated copies directly from the original source.
*As the cause is before us upon the questions of law arising upon the judge’s rulings before the jury, the judgment must be reversed, with costs, and a new trial ordered.
The other justices concurred.