JAMES S. P. HATHAWAY v. VILLAGE OF NEW BALTIMORE
AND LAKE SCHOOL DISTRICT.

*Municipal corporations as trustees—Erection and use of school houses— Laches—Title of statute—Statute of Charitable Uses.*

A court of equity looks with disfavor on any needless delay in complaining of a grievance when the party complained of is expending money or exercising important corporate functions under claim of right.

The title of "An act to enable the village of New Baltimore in Macomb county to erect a school house from moneys given or devised to the same for that purpose," is not foreign or repugnant to a section of the act providing that the building may be leased to the school district in which it lies, and the section is not, therefore, unconstitutional as departing from the title.

Municipal corporations may be authorized in performing their functions to use the aid of such corporate or other agencies as are suitable for the purpose.

Where money is left to a village to build a suitable building to be used for a high school, without further directions as to its maintenance, and without endowment, the village may use its reasonable discretion on the subject, and may put it on the basis of the public schools.

Such a building may be lawfully used in connection with the preparatory grades, and a court of equity cannot control the discretion of the local authorities in expediting the completion of the scheme and raising money for its support at public expense otherwise than may be provided by law when no private funds are given to the trust for that purpose.

Equity cannot compel a trustee to assume personal burdens not provided for by the means furnished by the trust itself, unless such obligation is imposed by law.

The statute of charitable uses was never in force in this State, and the Legislature, and not the courts, must act as *parens patriæ* in giving completeness and direction to imperfect charities; and a valid discretion vested in a municipal corporation by statute is beyond judicial interference.

Appeal from Macomb.    Submitted April 13.    Decided April 25.

BILL to enforce execution of a trust.    Dismissal affirmed.

*Norris & Uhl* for complainant appellant.

*James B. Eldredge* for defendants.

CAMPBELL, J.   The object of the bill in this case is to compel the village of New Baltimore to resume possession of a school house built with money bequeathed to the village "to be used in the erection in said village of a school building, to be used as a high school, and to be suitable for that purpose, and to be known as the Hathaway school." The will making this provision was sustained in *Hatheway v. Sackett* 32 Mich. 97, where the present complainant as residuary legatee sought to avoid it.   In the present bill he sues as a citizen of the village, in behalf of himself and the other inhabitants, but sets out as special reasons of grievance that he is the largest tax-payer, that he has a nephew in his family within the school ages, and that there are as many as fifty children in the village capable of entering a high school, and that the maintenance of a proper high school would in various ways suggested enhance the prosperity of the village.

The grievances set out are, 1, that the village refuses on his request to erect a building and maintain a high school; 2, that a building has been partly completed, not suited to a high school, but adapted for a primary school, and leased to the respondent school district in September, 1877, for ninety-nine years, and that it is used for a primary or common school, and not otherwise; 3, that all the fund has not been expended on the building, but some has been misappropriated, but how much or how is not shown.

The bill claims the lease to be invalid because the act of the Legislature of March 22, 1873 (Laws 1873, vol. 3, p. 66), is unconstitutional, for the reason that the title says nothing about leasing, and because the Legislature could not divert the trust.

The chief difficulty suggested in the matter of power is that the testator meant this school to be a school to be supported by tuition fees, and to receive paying pupils from other places as well as from the village, and that the district cannot lawfully establish such a school, and has not established any kind of high school properly so called.

The bill was dismissed for want of equity.

We are very strongly inclined to the opinion that if the complainant has any standing, the delay of some three years after the lease was made and the building transferred would deprive him of any right to complain. But we do not think the bill sustainable on any ground.

In the first place the bequest to the village was not burdened with any conditions or regulations, and a desire or plan not expressed by the testator cannot interfere with the discretion which the will confers on the legatee as to methods. And this will gave the village a discretion which cannot be interfered with by courts. *Attorney General v. Soule* 28 Mich. 153. The will does not confine the school to a paying school, and where the municipality is expected to establish a school, the presumption is at least, under our methods, as favorable to a free school as to any other.

It would also be beyond the general powers of a court of chancery under its judicial powers to get up a scheme and

undertake the enforcement of such a scheme specifically. If such a work is to be undertaken by the village through its ordinary municipal authorities, it would probably require further legislation to vest them with the requisite means. The acceptance of a trust furnishing means to erect a building, with nothing to endow it or keep it in operation, would not under any power which has been pointed out to us as belonging to a court of equity enable such a court to compel the raising of funds or the other requisite action. Equity, when a trust is as clearly defined as possible, cannot usually compel the trustee to assume additional personal burdens.

It is also very well settled that the power to complete and shape imperfect trusts does not belong to a court of equity as a judicial tribunal, but was in England a part of the sovereign prerogative of the crown, vested by law in the chancellor, although involving in the management the applicable forms of chancery procedure. 1 Spence 589, 590, etc.; *Wheeler v. Smith* 9 How. 55; *Fontain v. Ravenel* 17 How. 369.

The statute of charitable uses was never adopted in this State. *Methodist Church v. Clark* 41 Mich. 730. The legislative authority and not the judicial must be regarded as *parens patriæ*, and if any help is needed in completing the trust or shaping its application so as to make it carry out as nearly as possible the purposes of the testator, so much as is not within the discretion of the village must derive its aid from the statutes.

It has always been recognized as proper when power over a subject is given to any municipal or other body, to have such power carried out by any lawful instrumentalities within reach. Where, as is often the case, cities are given power over certain matters, it is very common and often necessary to have the immediate execution of such business confided to corporate or unincorporate agencies. The legislation of this State presents many illustrations of this, and some of them have come under consideration in this court. *People v. Mahaney* 13 Mich. 481; *People v. Hurlbut* 24

Mich. 44; *Jones v. Water Com'rs* 34 Mich. 273; *Board of Education v. City of Detroit* 30 Mich. 505: see particularly page 510, where the subject under discussion is quite analogous to the present.    See also *Riggs v. Board of Education* 27 Mich. 262; *Gray v. Forbes* 5 Cl. & Finelly 356.

Whether without the act of 1873 the village could have selected the school district as its agent to keep up the school we need not inquire, as that statute gave the power to do precisely what has been done.    And we cannot regard the section which furnishes this means of securing the creation and continuance of a high school as anything more than a natural supplement to the right of acceptance.    It is not foreign to the title.

The lease itself is very definite in providing that the building shall be used as a high school.    Under our system it is common and convenient to have the various grades in one building, and we do not think the use for the mixed purpose illegal.    Neither are we prepared to say that if it has not yet been found convenient to complete the building or open the higher department, the modified use in the meantime is improper.    We must assume that in proper times and ways the lease will be complied with, or in default that the proper authorities will enforce their rights.

The bill was properly dismissed, and the decree must be affirmed with costs.

The other Justices concurred.